# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

CURTIS ANTHONY YOUNG,

     Plaintiff,

     v.

MS. SPYKER, *et al.*,

     Defendants.

CIVIL ACTION NO. 1:23-cv-01839

(SAPORITO, J.)

## MEMORANDUM

Curtis Anthony Young, a former prisoner at SCI-Rockview, proceeds on an amended complaint (Doc. 35) raising Eighth Amendment claims against seven defendants affiliated with the prison, and seeks appointment of counsel (Doc. 36). The defendants move to dismiss the complaint in part. (Doc. 37). For the foregoing reasons, the Court will dismiss several claims but permit Young to proceed on Eighth Amendment conditions of confinement and excessive force claims. The Court will deny Young's request for appointment of counsel without prejudice.

## I. LEGAL STANDARDS

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and

viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Further, under 28 U.S.C. § 1915A, the Court has an independent obligated to screen a civil complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison

conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *id.* § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1); *see generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587-89 (W.D. Pa. 2008) (summarizing screening procedures and standards). The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6). *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588.

## II.    BACKGROUND

### A. Original Complaint

Young's case concerns his temporary transfer from the Diversionary Treatment Unit ("DTU")[1] to the Restricted Housing Unit ("RHU") at SCI-Rockview in June 2023. Young allegedly suffers from antisocial personality disorder and was found guilty but mentally ill ("GBMI") in criminal court. He objected to being placed in the RHU because of his

---

[1]    The DTU is a form of high security housing for inmates with mental health needs. *See Brown v. Baronner*, No. 3:19-CV-0374, 2022 WL 905538, at *4 (M.D. Pa. Mar. 28, 2022).

mental illness, and he allegedly tried to commit suicide when officers arrived to forcibly move him there. After defendants moved to dismiss the original complaint, the Court permitted Young to proceed on the following claims:

- Eighth Amendment claims against defendants Spyker, House, Strait, Wendle, Rivello, and Helsel, based on these defendants "placing Young in the RHU when they knew that he had a mental illness," which allegedly caused his mental health to deteriorate (Doc. 32 at 12).

- Eighth Amendment excessive force claims against defendants Johnson and Bollanger based on their alleged intervention in a suicide attempt by Young (*Id.* at 12-13).

Several other claims were dismissed, and Young was permitted to file an amended complaint to potentially cure deficiencies with those claims. (Doc. 33, ¶ 7)

### B. Amended Complaint

The operative complaint (Doc. 35) specifically alleges as follows: On May 31, 2023, several members of Young's Program Review Committee ("PRC") approached his cell. Defendant Spyker allegedly said: "PRC has

decided that you will no longer live on the DTU[. W]e all voted and decided that you will be placed in the RHU." Defendants Strait, House, Wendle, and Rivello allegedly had "a strong say[-]so" within the PRC and therefore "partook in" this decision.

Young told Spyker: "I can't live in the RHU as a mentally [ill] inmate." Spyker replied: "You['re] not a real D-Code[2] and you have no choice[. Y]ou can move willingly or by force." Young told Spyker he would "rather die on the DTU where I'm suppose[d] to be th[a]n live in the RHU where by policy I'm not to be housed. I'm GBMI and antisocial[,] I am to live on a mental health unit." "CCPM Psych Helsel," who is not named as a defendant, allegedly said: "[T]his is the first time [I've] seen this happen[,] a mentally ill inmate housed in the RHU[. J]ust move to avoid trouble. You['re] right, you shouldn't have to live in the RHU." Wendle allegedly said: "Just move to the RHU and file a grievance[.] You already won, they cannot house a mental health inmate in the RHU." Young asked Wendle to call Spyker or Rivello to stop the transfer, to which

---

[2] Within the Pennsylvania Department of Corrections, the D Stability Code generally "applies to inmates who have the most significant mental health needs," including GBMI inmates, and "entitles them to the greatest amount of mental health resources available." *Dooley v. Wetzel*, 957 F.3d 366, 370 (3d Cir. 2020) (citations omitted).

Wendle allegedly responded: "We all got bosses . . . who do you think approved this move?"

Wendle assembled a team to forcibly remove Young to the RHU. As the team approached, Young attempted to commit suicide by hanging himself with a string from his bedsheet. The team forcibly stopped his suicide attempt, in part by spraying him with OC spray, but Young remained attached to the string, which needed to be cut. The team supervisor, Lt. Johnson, yelled: "Who has the cut off style tool?" DOC policy requires all officers assigned to the DTU to carry this tool[3], but in this case "no one had" the tool. CO Bollanger allegedly "grasp[ed] the sheet string attached to [Young's] neck and yank[ed] it 3-4 hard times," which "pulled [Young's] neck" and caused his head to slam into the door each time. This dislodged the string from the door frame, but it was still attached to Young's neck. Young repeatedly yelled: "I can't breath[e]," but before the string was removed, he was taken to the "stripcage" to

---

[3] The Court takes judicial notice of the following DOC policy: "CO, Sergeants, and Lieutenants assigned to a DTU are required to wear an emergency cut-away style tool during their shift when assigned to the DTU. The cut-away tool shall be carried in a case on the officer's belt to expedite an appropriate response during suicide attempts requiring the need to remove a ligature with the tool." *See* DOC Policy Statement 13.8.1, § 14(D), ¶ 37 (as amended Jan. 10, 2022).

decontaminate from the OC spray. In the stripcage, Johnson again called for the cutoff tool. An unnamed officer allegedly said: "I seen him step out the cell[,] I thought we didn't need it," then found the tool and cut the string off of Young.

At this point, Young asked Johnson where he would be going "after this," and Johnson confirmed that he would ultimately be moved to the RHU. Young yelled: "I'd rather die in the DTU stripcage th[a]n go to the RHU where I'm not suppose[d] to be." Young's description of what followed is unclear, but he allegedly "ran [his] forehead into the solid stone bricks in the stripcage 3 times." Unnamed officers sprayed him with OC spray, handcuffed him, then placed him in a restraint chair, and he was taken to a psychiatric observation cell ("POC").

Spyker visited the POC, and Young continued to contest his impending move to the RHU. Spyker told Young that he was being moved because he was "disruptive on the DTU . . . you yell, kick, and scream on the door," which Young denied. Young said "I'ma try to kill myself again[,] I'm not going to the RHU." Spyker allegedly replied: "Mr. Young, that's up to you." The following day, Young was "told [he] had to leave [the POC] to go to the RHU" by a staff member he does not identify. Young

responded that he was "still suicidal," but was told that he would either move or "be sprayed and harm[ed]."

Eventually, Young was moved to the RHU for 21 days, despite continual grievances and protests that he should not have been placed there. In his grievance appeals attached to the complaint, Young alleged:

> Being on the RHU was hard on me mentally . . . the RHU environment isn't the DTU environment. Programs and activities aren't the only benefit of the DTU service — the calm of the unit, the colors on the walls[,] the signs speaking directly to me talking about coping with struggles of mental health 'suicide prevention' . . . even the DTU COs are trained different. The constant checking on you, the understanding when I see another inmate in blues knowing I'm not alone in the fight . . . Deputy Spyker and PRC took that from me for three weeks . . .
>
> I deserve . . . to receive therapy [and] programming in settings that are appropriate. . . . Solitary confinement or disciplinary confinement in "Restricted Housing Units" is not a treatment unit. Mental health experts, advocates, and clinicians believe that those forms of isolated confinement make mental health conditions worse. . . . Having to ask for psych[s] . . . 30 minute rounds . . . housed with Restricted Housing inmates . . . every day being somewhere I know I shouldn't be . . . It's created paranoia, anxiety, full blown stress.

(Doc. 35-2 at 5, 7-8).

Young asserts three types of claims:

- Eighth Amendment violations by unspecified defendants

based on "denial of mental health treatment by placing plaintiff in the RHU when defendants knew plaintiff had a mental illness and [was] supposed to live on the DTU mental health unit";

- Excessive force claims against Bollanger and Johnson;

- "Deliberate indifference to the risk of suicide or self-harm" by unspecified defendants.

## III.  DISCUSSION

Defendants initially sought dismissal of the operative complaint in its entirety. (Doc. 37). However, their brief indicates that upon further consideration, they seek only partial dismissal. *See* (Doc. 38 at 2-3).

### A. Unnamed Defendants

First, the movants request that ten defendants (Koch, Varner, Sisto, Conway, Long, Laborde, Kohler, Loy, Sprinkle, and Helsel) be "dismissed from this action." None of these individuals are named as defendants in the operative complaint. Although they were named in the original complaint, all were terminated[4] from the docket by operation of the

---

[4] Helsel was apparently terminated in error, as the screening order explicitly recognized a viable Eighth Amendment claim against him or *(continued on next page)*

Court's order addressing the motion to dismiss that complaint. *See* (Doc. 33). Therefore, this request will be denied as moot.

### B. Medical Care/Suicide Risk Claims

Next, defendants seek dismissal of "[a]ny claim that Defendant Spyker denied Plaintiff medical care." The Court will dismiss all claims against Spyker, or any other intended defendant, premised on denial of medical care or deliberate indifference to a risk of suicide.

A plaintiff can state an Eighth Amendment claim for deliberate indifference to a serious medical need by showing that (1) he had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff. *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023). A plaintiff can demonstrate deliberate indifference by showing a "complete denial of medical care," *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017), or, "short of absolute denial," that a particular kind of necessary care was denied for a non-medical reason. *See Durmer v. O'Carroll*, 991

---

her. *See* (Doc. 33, ¶ 9). However, the amended complaint does not list Helsel as a defendant, nor does it suggest that Young intended to do so. The amended complaint "supersedes the original pleading and renders the original pleading a nullity," *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019), so the request to dismiss Helsel is moot.

F.2d 64, 67-68 (3d Cir. 1993); *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

Here, Young's grievance appeals explain his belief that the RHU was not an "appropriate setting" to treat his mental illness. However, his discomfort with the setting or the logistics of treatment in the RHU does not suggest a plausible claim for "denial of medical care." A prisoner has no constitutional right[5] to dictate a particular method or means of treatment. *See Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010); *James v. Pennsylvania Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007). Regardless, such a dispute would not provide a basis for liability against Spyker, a non-medical officer. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison.").

Young also asserts a claim against unspecified defendants premised

---

[5] Young claims that his placement in the RHU was a violation of DOC policy, but a violation of prison policy does not itself show a constitutional violation. *See Washington v. Salamon,* No. 4:21-CV-01746, 2023 WL 8703392, at *5 n.60 (M.D. Pa. Dec. 15, 2023) (listing cases).

on deliberate indifference to a risk of suicide. In the context of suicide specifically, a plaintiff can state an Eighth Amendment claim by alleging (1) a "particular vulnerability to suicide," meaning a "strong likelihood," rather than a "mere possibility," that he would attempt it; (2) that "the prison official knew or should have known" of that vulnerability; and (3) "the official acted with reckless or deliberate indifference, meaning something beyond mere negligence." *Beers v. Cnty. of Northumberland*, No. 23-2555, 2024 WL 2874283, at *2 (3d Cir. June 7, 2024) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017)). The risk must be "so obvious that a lay person would easily recognize the necessity" to intervene. *Palakovic*, 854 F.3d at 222-23.

When Young first learned that he would be moved to the RHU, he remarked to Spyker that he would "rather die on the DTU" than "live in the RHU." However, this vague comment is not "so obvious that a lay person would easily recognize" a strong likelihood that Young would attempt suicide. Young does not allege that his condition had a known predisposition to suicide, nor any prior suicide attempts that were known

to Spyker.[6] Later, after Young's suicide attempt, he told Spyker: "I'ma try to kill myself again[,] I'm not going to the RHU." The flippant response Young attributes to Spyker is deplorable, but not an Eighth Amendment violation; by that time, Young was under psychiatric observation in the POC. As with the medical care claims, Spyker and the other defendants[7] were entitled to rely on the judgment of medical professionals as to the appropriate response to any risk of suicide. *See*, *e.g.*, *Pugh v. Harry*, No. 1:25-CV-00893, 2025 WL 2232333, at *9-10 (M.D. Pa. Aug. 5, 2025).

## C. Conditions of Confinement/Excessive Force Claims

As with the prior complaint, Young's Eighth Amendment claims pertaining to the RHU will instead be construed[8] as conditions of

---

[6] *See McCullough v. Clinton Cnty.*, No. 4:23-CV-00171, 2024 WL 1468359, at *5 (M.D. Pa. Apr. 4, 2024) ("When determining whether a custodial official has knowledge of an inmate's particular vulnerability to suicide, courts look to whether the official has knowledge of past suicide attempts or a 'psychiatric diagnosis identifying suicidal propensities.'" (quoting *Palakovic*, 854 F.3d at 222-23)).

[7] None of the defendants are identified as medical professionals, *see* (Doc. 35 at 2-4), and Young has not alleged that any of them were involved in his medical care within the POC.

[8] Although Young identified his Eighth Amendment claims as "medical care" claims, they will not be dismissed for that reason. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) ("Federal pleading
*(continued on next page)*

confinement claims: specifically, that knowingly imposing these conditions on a prisoner in Young's condition constituted cruel and unusual punishment and exacerbated his existing illness. *See, e.g., Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 428-29 (M.D. Pa. 2020); *Fahey v. Grimm*, No. 2:17-CV-1059, 2020 WL 758819, at *2-3 (W.D. Pa. Feb. 14, 2020). The complaint plausibly alleges the personal involvement of defendants Spyker, Strait, House, Wendle, and Rivello, given their alleged participation in the PRC and "vote" to move Young from the DTU to the RHU. Young's excessive force claims against Johnson and Bollanger, uncontested in the motion to dismiss, will also proceed.

## IV.    APPOINTMENT OF COUNSEL

Young requests appointment of *pro bono* counsel. (Doc. 36). A prisoner has no constitutional or statutory right to appointed counsel in a civil case. *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). Under the *in forma pauperis* statute, however, a federal court may request that an attorney represent an indigent party on a *pro bono* basis.

---

rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

*See* 28 U.S.C. § 1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).

The court's appointment of volunteer counsel is discretionary and must be made on a case-by-case basis. *Tabron*, 6 F.3d at 157-58. The appointment of *pro bono* counsel to represent an indigent civil litigant "is usually only granted upon a showing of special circumstances indicating the likelihood of substantial prejudice," such as the litigant's "probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984). "As a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." *Montgomery*, 294 F.3d at 498-99. If the plaintiff overcomes this threshold hurdle, the court considers these factors:

1. the plaintiff's ability to present his or her own case;

2. the difficulty of the particular legal issues;

3. the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

4. the plaintiff's capacity to retain counsel on his or her

own behalf[9];

5. the extent to which a case is likely to turn on credibility determinations, and;

6. whether the case will require testimony from expert witnesses.

*Id.* at 499 (citing *Tabron*, 6 F.3d at 155-57).

Without prejudice to any further evidence Young may produce, defendants' pending motion for summary judgment suggests that his claims may lack arguable merit. Among other points, defendants present evidence that Young failed to exhaust administrative remedies as to his excessive force claims, and that he was placed in the RHU for a legitimate penological purpose in the aftermath of a fight with another inmate. *See* (Docs. 66, 67); *see, e.g., Johnson v. Mace-Liebson*, No. 1:20-CV-01247, 2021 WL 12142805, at *2 (M.D. Pa. Mar. 19, 2021) ("Given the issues raised in Defendants' motion for summary judgment, the court has not yet determined his case has arguable merit.").

Even assuming the case has arguable merit, the Court finds that appointment of volunteer counsel is not warranted. Young argued that

---

[9] This factor is "presumptively fulfilled," because Young is proceeding *in forma pauperis. Woodham v. Sayre Borough Police Dep't*, 191 F. App'x 111, 116 (3d Cir. 2006).

his imprisonment would limit his ability to litigate, but he has since been released from prison. Although he lacks legal education, his filings show that he can explain his case and collect relevant documents. *See* (Docs. 28, 35, and attachments). Young, like most *pro se* litigants, would likely benefit from an attorney, but he has not shown that this is a "special circumstance" in which he cannot "present the facts and legal issues to the court." *Smith-Bey*, 741 F.2d at 26.

Because Young has not yet responded to the pending motion for summary judgment, it is unclear what issues will be disputed. Moreover, credibility determinations and expert testimony are necessarily not at issue during the summary judgment stage. If, in opposing summary judgment, Young proffers sufficient evidence to establish a genuine dispute of material fact, that would compel the court to deny the motion for summary judgment and set this matter for trial. Only then might the record "suggest[] a need for appointed counsel *during trial*," as opposed to at this earlier stage, "where credibility determinations are not made." *Parkell v. Danberg*, 833 F.3d 313, 341 (3d Cir. 2016) (emphasis added). If Young proffers such evidence and his claims survive summary judgment, the Court may then consider a renewed motion for appointment of

counsel. *See Woodham v. Sayre Borough Police Dep't*, 191 Fed. App'x 111, 116 (3d Cir. 2006).

## V.    CONCLUSION

For the foregoing reasons, Young will be permitted to proceed on Eighth Amendment conditions of confinement claims against Spyker, Strait, House, Wendle, and Rivello, and Eighth Amendment excessive force claims against Johnson and Bollanger. Young's motion for appointment of counsel will be denied without prejudice, and he will be directed to respond to defendants' pending summary judgment motion. An appropriate order follows.


Dated: September 5, 2025            *s/Joseph F. Saporito, Jr.*
                                    JOSEPH F. SAPORITO, JR.
                                    United States District Judge